SUSAN L. GIESE, APPELLEE AND CROSS-APPELLANT, V. DANIEL J.
GIESE, APPELLANT AND CROSS-APPELLEE.

497 N.W.2d 369

Filed March 26, 1993.   No. S-90-881.

David T. Schroeder, of Kelly & Schroeder, for appellant.

Warren S. Zweiback and Patrick M. Flood, of Zweiback, Hotz & Lamberty, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.

Susan L. Giese seeks further review of a decision of the Nebraska Court of Appeals reducing the cash award she received from Daniel J. Giese in their dissolution of marriage decree. See *Giese v. Giese*, 1 NCA 1485 (1992).

Part of that cash award was in lieu of Susan's interest in the family business, which was awarded to Daniel. The remainder of the cash award to Susan represented the value of her contribution to the reduction of Daniel's premarital debt.

In seeking further review in the Supreme Court, Susan raises the single issue of whether Daniel waived his right to appeal the judgment of the district court for Hall County by his acceptance of the family's cleaning business, which he treated as his own property after the dissolution of marriage decree was entered. We reverse the decision of the Court of Appeals in that regard and affirm the terms of the cash award Susan received in the dissolution decree entered by the district court.

On her cross-appeal in the Court of Appeals, the amount of child support and child-care expense Susan was awarded in the district court was increased to $813 per month. Since neither party asked for further review of that award, the Court of Appeals' decision in that regard as well as other terms of the dissolution decree not changed by the Court of Appeals are affirmed.

## FACTS

The facts material to this appeal are as follows:

Daniel and Susan Giese were married February 15, 1979. Their marriage was dissolved August 8, 1990.

The district court ordered the family home, a lot owned by the couple, and jointly held stocks and securities to be sold and the proceeds divided equally. The home was on the market, but had not been sold at the time of the appeal. Other property of the parties and associated costs of the divorce were also allocated by the court.

Daniel was awarded a 1989 Dodge Caravan automobile and Ideal Cleaners, the family business, which was valued at $150,000 and which he and Susan had operated. Susan was awarded two automobiles, valued together at $8,000, and a monetary award of $123,000. The $123,000 monetary award represented $56,000 as the value of Susan's contribution to the reduction of Daniel's premarital debt in a construction business he owned and $67,000 as her interest in Ideal Cleaners minus the value of the two automobiles. Daniel was ordered to pay the judgment in 60 monthly payments of $2,050 principal, plus interest at 9.09 percent per annum on the unpaid principal balance. Susan was awarded child support from Daniel for one minor child in her custody. Other debts, costs, and attorney fees

were allocated by the court.

On August 29, 1990, Daniel timely appealed to this court, alleging, inter alia, that the trial court erred in finding that the parties, through their joint efforts, had reduced Daniel's premarital debt by $108,000 and that the property division was excessive to the extent that the court awarded Susan $56,000 for her share in that debt reduction.

On December 28, 1990, Susan moved for summary dismissal of Daniel's appeal on the basis that he had already accepted the benefit of the judgment in his favor and therefore had waived his right to appeal. Susan submitted an affidavit setting forth the benefits of the property settlement which Daniel had accepted and stating that "[Daniel] owns all of the outstanding common stock of Ideal Cleaners of Grand Island, Inc. (previously owned jointly by the parties) and [Daniel] is presently operating Ideal Cleaners of Grand Island, Inc."

On January 8, 1991, Daniel filed an objection to Susan's motion to dismiss the appeal, and in his accompanying memorandum, he objected to the court's consideration of Susan's affidavit, but requested the court to consider his own affidavit if the court considered Susan's affidavit. In his memorandum, Daniel denied that he had received any benefit from the dissolution decree or that he had done anything to attempt judicial enforcement of the decree. He alleged that anything done after the decree was for the benefit of Susan, and not himself.

In an accompanying affidavit, Daniel denied that, as to Ideal Cleaners, either party had done anything with respect to ownership transfers of stock or the sale and execution of stock certificates. Daniel further stated in his affidavit that the real estate upon which the business was operated, and which was awarded to him in the divorce decree, remained in both his and Susan's names and that he had done nothing to enforce the divorce decree with respect to that property.

This court overruled Susan's motion for summary dismissal on January 17, 1991, and the case was subsequently assigned to the Court of Appeals' docket.

On June 17, 1992, Susan again moved for summary dismissal, this time in the Court of Appeals. She submitted a

second affidavit, in which she declared that Daniel was awarded all of the common stock of Ideal Cleaners, the primary asset of the parties. Susan further stated that Daniel had closed his own personal checking account and had been paying personal debts and expenditures from Ideal Cleaners' assets. According to Susan's affidavit, these expenditures consisted of payment of a premarital debt exceeding $24,000; property division, child support, and other court-ordered payments exceeding $26,000; and personal expenses, including vacations and trips, exceeding $50,000.

Daniel again opposed Susan's motion for summary dismissal, and he resubmitted the documents, including his affidavit, which had been submitted in opposition to Susan's first motion for summary dismissal.

The only other evidence as to whether Daniel had accepted the benefits of the decree was adduced at a contempt, garnishment, and garnishee liability hearing, held on February 6, 1991, in the district court, and at Daniel's deposition 1 day prior to that hearing.

Both in Daniel's deposition and at the hearing, Daniel admitted that there were no stock certificates, nor was there a stock register, for Ideal Cleaners. He testified that, in fact, the only evidence of stock ownership consisted of a stock purchase agreement conveying the stock of the business to Daniel and Susan on August 31, 1984, and the divorce decree, which awarded the parties' interest in Ideal Cleaners to Daniel.

In his deposition, Daniel testified that he no longer maintained a personal checking account. At the contempt hearing, Daniel testified that he did have a personal bank account, but that he did not use the account anymore because Susan's attorney had put a garnishment on it, and that he did not have any money in the account. He conceded in his deposition and at the court hearing that he paid his court-ordered obligations as well as his personal expenses with checks drawn on Ideal Cleaners' account. At the contempt hearing, Daniel stated that Ideal Cleaners' bank account "is just a bank account . . . . It's not corporate assets. Corporate assets become my personal responsibility as soon as they are entered in in a Subchapter S corporation" and that "I can use

those funds from a personal basis or I can use them as a corporate-expense basis."

The Court of Appeals considered the merits of Daniel's appeal after holding that Daniel's actions "[did] not equate with the simultaneous appeal from a money judgment and the acceptance of all or part of the money from the judgment" and that therefore, Daniel had not waived his right to appeal. *Giese v. Giese*, 1 NCA 1485, 1489 (1992). The Court of Appeals agreed with Daniel that the district court erroneously found that Susan had participated in the reduction of Daniel's premarital debt from $132,000 to $24,000.

We granted Susan's petition for further review solely to determine whether Daniel had accepted the benefit of the dissolution decree, thereby waiving his right to appeal the property division.

## PROOF OF FACTS BY AFFIDAVIT

Before we reach the merits of Susan's appeal to this court, it is necessary to address Daniel's objection to Susan's use of affidavits to prove certain facts at issue in the appeal. This court has held that in order to establish whether a party has so dealt with a judgment or other order appealed from as to have waived any right to review, it is permissible to present affidavits foreign to the record thereto. See *Phelps v. Blome*, 150 Neb. 547, 35 N.W.2d 93 (1948). Therefore, both Susan's and Daniel's affidavits have been duly considered by this court.

## ACCEPTANCE OF BENEFITS OF THE DECREE

Susan claims that Daniel waived his right to appeal because he accepted (1) proceeds from the liquidation of joint assets; (2) certain property awarded him by the dissolution decree; and (3) the district court's award of Ideal Cleaners, the family business, and treated its assets as his own. Daniel agrees that one who accepts a money judgment is precluded from appealing, but he contends that this rule does not apply to one who accepts a judgment of property. The Court of Appeals agreed with Daniel.

There appears to be no Nebraska case which directly addresses the issue raised by this appeal in the context of a property judgment rather than a money judgment. However,

the rule in Nebraska as to money judgments is clear.

We most recently considered this issue in *Shiers v. Shiers*, 240 Neb. 856, 485 N.W.2d 574 (1992). In that case, the district court ordered the husband to pay the wife $56,000 to equalize the property distribution. The husband paid this amount into the court, and the wife accepted the money, but then appealed the court's refusal to award her alimony. We held that by accepting the $56,000, the wife had waived her right to appeal from the judgment. The court reviewed prior case law and stated the general rule that "in a dissolution of marriage action, *one who accepts any part of a judgment in her or his favor* forfeits the right to challenge by appeal any issue but those affecting the interests and welfare of such children as may be involved." (Emphasis supplied.) *Id.* at 860, 485 N.W.2d at 576.

The court recognized an exception to this general rule in *Kassebaum v. Kassebaum*, 178 Neb. 812, 815, 135 N.W.2d 704, 706 (1965):

> "If the outcome of [an] appeal could have no effect on [an] appellant's right to the benefit accepted, its acceptance does not preclude the appeal. There is no acceptance of benefits under a judgment, and hence no waiver of rights of appeal, where a party exercises a *right which existed prior to the judgment* and which, though recognized or confirmed by the judgment, is not merged in it."

(Emphasis supplied.)

In *Kassebaum*, the husband had paid court costs, attorney fees, and all child support required by the decree. In the court-ordered property division, he received a pickup truck, an automobile, farm property, equity in a real estate contract, and a joint savings account with a balance of $511.54. This was approximately half the property. The husband appealed on the ground that the property division was inequitable, and the wife moved for dismissal of the appeal on the basis that the husband had accepted the benefit of the judgment by paying the costs, fees, and child support and by withdrawing $200 from the former joint savings account after entry of the decree.

The court held that payment of costs, fees, and child support did not deprive the husband of his right of appeal, as these were

not voluntary payments. They were made pursuant to court order, and the husband could have been held in contempt for failing to make the payments. The court further noted that cases which follow the general rule that acceptance of benefits waives the right of appeal "*generally* involve the acceptance of money deposited or paid into court." (Emphasis supplied.) *Id.* at 814, 135 N.W.2d at 705.

The only act in *Kassebaum* which might have constituted acceptance of the benefit of the judgment was the husband's withdrawal of $200 from the savings account. The court held that it did not, because this was less than half the money in the account, and the husband would have been entitled to half the money in the account. In *Shiers*, the court commented that *Kassebaum* also could have been decided on the basis that the husband "had accepted no benefit conferred upon him, but, rather, had merely discharged, pending the outcome of the appeal, the obligations imposed upon him." 240 Neb. at 859, 485 N.W.2d at 576.

In the case under consideration, Daniel's alleged acceptance of the benefits of the decree must be examined in light of the above rules. The court-ordered sale of joint assets such as the family home, the stocks and bonds, and the lot and the equal division of the proceeds did not confer any right which did not exist in each party prior to the judgment, and they are permitted by *Kassebaum*. As a joint owner, Daniel was entitled to half of these assets prior to the judgment. The court in *Kassebaum* held that payment of child support and other costs pursuant to court order does not deprive a party of the right to appeal. As we noted of the husband in that case, Daniel would have been subject to contempt proceedings for failure to comply with court-ordered payments.

Daniel's acceptance of Ideal Cleaners, however, does not fall within the *Kassebaum* exception. The cleaning business was a joint asset of the parties during the marriage, and Daniel received this entire asset. Susan's claim in her affidavit that Daniel has used the funds of the cleaning business since the time of the decree to pay his $24,239.64 premarital debt to First National Bank in Kearney, as well as to pay personal debts and expenditures in excess of $50,000, is uncontroverted by Daniel.

He has admitted on separate occasions that either he has no personal checking account or his personal account has no funds in it and that he pays his expenses from Ideal Cleaners' account. Daniel could have requested the district court to appoint a receiver, perhaps even himself as trustee, to oversee the operation of Ideal Cleaners during the pendency of an appeal, but instead he took complete control of the business and engaged in acts which clearly indicate that he considered Ideal Cleaners to be his sole personal asset.

Although Daniel states in his affidavit that "nothing has been done by [Daniel] or [Susan] with respect to ownership transfers of stock or the sale and execution of stock certificates," we are puzzled as to what more Daniel believes can be done in this regard. He concedes that there are no stock certificates for Ideal Cleaners and that he has been awarded 100 percent of the interest in Ideal Cleaners by the dissolution decree.

Daniel also states in his affidavit that the real estate upon which Ideal Cleaners is located, and which was awarded to him in the decree, is still in the names of both himself and Susan and that he has done nothing to enforce the decree with respect to that property. Susan has not disputed this. However, even assuming that the real estate upon which Ideal Cleaners is located is still titled in the names of both Daniel and Susan, the fact that Daniel has not yet received the *entire* benefit of the judgment does not preclude application of the doctrine of waiver. The rule enunciated in *Shiers* does not require acceptance of *all* of the judgment before one forfeits the right of appeal. The acceptance of *any part* of a judgment is sufficient.

By way of analogy, Susan was awarded $67,000 and two automobiles with a combined worth of $8,000 *in lieu of* her $75,000 interest in Ideal Cleaners. The court ordered Daniel to make payments to Susan over a period of 60 months, so Susan has not yet received the total property granted to her in the dissolution decree. Nonetheless, under *Shiers*, Susan waived her right to appeal the property division by accepting payments toward the judgment awarded her.

There appears to be no good reason why the same rule of law should not apply to Daniel, even though he urges otherwise,

simply because he has received the benefit of a business rather than a cash settlement. Although we stated in *Kassebaum* that this rule *generally* applies to acceptance of a money judgment paid into court, that statement is no more than an observation, and it is not the law. Accordingly, we hold that by accepting the award of Ideal Cleaners and treating its assets as his own, Daniel accepted the benefit of the property awarded him in the dissolution judgment and forfeited his right to appeal that judgment.

## CONCLUSION

Daniel's acceptance of the cleaning business and his subsequent use of the business assets as his own seem to clearly indicate that Daniel has received and accepted at least part of the benefit of the property awarded him in the dissolution decree. We therefore reverse the decision of the Nebraska Court of Appeals to reduce Susan's cash award and remand the cause to that court with direction to dismiss Daniel's appeal. We affirm the Court of Appeals' decision to increase Daniel's child support and child-care expense obligation to $813 per month.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.