JANET L. PAULSEN, APPELLEE, V.
RICHARD S. PAULSEN, APPELLANT.
650 N.W.2d 497

Filed September 3, 2002.    No. A-00-1246.

Bernard J. Glaser, Jr., for appellant.

Mark J. Krieger, of Bowman & Krieger, for appellee.

HANNON, SIEVERS, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

The marriage of Janet L. Paulsen and Richard S. Paulsen was dissolved by a decree of dissolution in the district court for Lancaster County, Nebraska, on November 15, 2000. Richard has appealed, alleging error only with respect to the award of alimony to Janet. Finding no abuse of discretion, we affirm.

## BACKGROUND

Janet and Richard were married on March 26, 1972. Three children were born during the course of the marriage, all of whom had reached the age of majority prior to this action. At the time of the marriage, Janet had obtained her cosmetology license; however, she was not employed for approximately 1 year after the marriage. The parties moved to Lincoln, Nebraska, in 1973, and Richard began his employment with the city of Lincoln as a firefighter on January 2, 1974. Richard has been continuously employed by the Lincoln Fire Department, with his current position being fire apparatus operator. Although Richard had had various additional part-time jobs in the past, he had not engaged in such employment for the last few years. After moving to Lincoln, Janet became employed as a hairdresser, which profession she maintained throughout the marriage, with the exception of an interruption after the birth of their third child. While the children were young, Janet worked on a part-time basis in order to be available to meet the needs of the children. Janet's employment alternated between working for others and being self-employed. Both parties participated in the upbringing of the children, although Janet described herself as the primary caretaker. In approximately 1986, Janet opened her present beauty salon, which is located in one-half of a duplex purchased by the parties; the other one-half of the duplex is rented to one of the parties' sons for $300 per month.

At the time of trial, Richard earned $16.27 per hour and averaged 56 hours per week. Richard's gross income in 1999 was $48,598; and in 2000, through October 11, he had earned $41,331 in gross income, having received a 4-percent raise for the year 2000. Janet works 4 days a week, averaging 10 to 12 hours per day. In 1999, Janet's gross income from her self-employment was $21,631, with a net profit, before taxes, of $15,522. Janet's annual earnings for 2000 were expected to reach approximately $18,000. Richard submitted a list of monthly expenses totaling $4,540, and Janet's personal monthly expenses submitted into evidence were $2,952, which did not include her expenses for operating the salon, such as the mortgage payment on the duplex, utilities, and supplies. Janet will be required to obtain her own health insurance following the dissolution at the approximate monthly cost of $300. Janet has experienced medical problems, including a recent hysterectomy and a bleeding ulcer, and she suffers from depression. She was on medication for the bleeding ulcer and depression at the time of the trial and may require surgery in the future for the bleeding ulcer. Janet had been hospitalized on more than one occasion in the past for the bleeding ulcer.

The parties have been separated since 1994, except for a 1½-year period between August 1996 and February 1998, when they were reconciled. Several dissolution actions had been previously filed and dismissed, with Janet filing the operative petition on April 1, 1999. During the period of separation, Richard voluntarily paid $450 per month toward the mortgage on the family home in which Janet resided.

The parties were able to reach a property settlement agreement for approval by the court, whereby the marital estate was divided. Janet was awarded the marital home and duplex, together with a vehicle, savings bonds, and an annuity. Richard was awarded real estate owned by the parties in Franklin, Nebraska, together with three older vehicles, a boat, and his entire pension from the city of Lincoln. In order to equalize the division, Richard was required to pay Janet the sum of $35,000, although the schedule of payment was left for the court to determine. The parties were unable to agree on alimony, which issue was also submitted to the court for determination. In the decree of dissolution, the district court ordered that the equalization

payment be made in the following manner: $25,000 payable within 60 days and the balance payable at $2,000 per year for 5 years, with interest as set by the court. The court further awarded Janet alimony in the sum of $400 per month for 120 months. It is from the award of alimony that Richard appeals.

After Richard filed his notice of appeal, Janet executed and delivered to Richard a quitclaim deed involving the Franklin real estate awarded to Richard in the decree. Thereafter, the Franklin State Bank took a mortgage from Richard on the real estate in the sum of $15,000. On January 10, 2001, Richard paid into the district court the sum of $25,000, pursuant to the decree. Janet filed a motion for summary dismissal, asserting that Richard had accepted the benefit of the judgment and had therefore waived his right to appeal. We overruled Janet's motion for summary dismissal, indicating that we would consider the issue of the acceptance of benefits at oral argument.

## ASSIGNMENT OF ERROR

Richard alleges error in the award of alimony to Janet in the amount of $400 per month for 120 months.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Tyma v. Tyma,* 263 Neb. 873, 644 N.W.2d 139 (2002). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Id.* A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## ANALYSIS

*Acceptance of Benefits.*

Janet argues that Richard's refinancing of the Franklin property and treatment of the property as his exclusive property amounts to a waiver of his appeal, citing *Giese v. Giese,* 243 Neb.

60, 497 N.W.2d 369 (1993). In *Giese*, a cleaning business was owned jointly by the parties, and the husband was awarded the entire asset upon the dissolution of marriage. The husband thereafter paid personal debts and made other personal expenditures with funds or assets of the business. In holding that the husband had accepted the benefit of the property awarded to him and thus forfeited his right to appeal that judgment, the *Giese* court followed the general rule that in a dissolution of marriage action, one who accepts any part of a judgment in his or her favor forfeits the right to challenge by appeal any issue but those affecting the interests and welfare of such children as may be involved. *Id.*

One exception to the general rule stated in *Giese* was set forth by the Nebraska Supreme Court in *Kassebaum v. Kassebaum*, 178 Neb. 812, 135 N.W.2d 704 (1965). The *Kassebaum* case involved a situation where the husband had paid the court costs, attorney fees, and all amounts of child support required by the decree. He had also withdrawn the sum of $200 from a joint savings account awarded to him in the decree. In denying the wife's motion to dismiss, the court stated that " '[i]f the outcome of the appeal could have no effect on the appellant's right to the benefit accepted, its acceptance does not preclude the appeal.' " *Id.* at 815, 135 N.W.2d at 706, quoting 4 Am. Jur. 2d *Appeal and Error* § 253 (1962). As stated in *Shiers v. Shiers*, 240 Neb. 856, 485 N.W.2d 574 (1992), there was no judgment in favor of the *Kassebaum* appellant; he had accepted no benefit conferred upon him, but, rather, had merely discharged, pending the outcome of the appeal, the obligations imposed upon him.

In the instant case, while Richard accepted receipt of the quitclaim deed to the Franklin property and refinanced the same, this property was not at issue in the appeal. Rather, the only issue relative to property division at trial was the timing of the receipt of the property judgment by Janet, with Janet urging payment of the entire $35,000 immediately and suggesting that the Franklin real estate could provide Richard with substantial funds to contribute toward the payment. The only issue raised by Richard on appeal is the award of alimony to Janet. Therefore, the outcome of this appeal relative to the only assigned error, namely, alimony, could have no effect on Richard's right to the benefits accepted, namely, the Franklin real estate. Under these

circumstances, we find that Richard has not forfeited his right to appeal the issue of alimony.

*Alimony.*

Richard asserts that the district court abused its discretion in awarding Janet alimony in the amount of $400 per month for 120 months.

■ In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002).

Neb. Rev. Stat. 42-365 (Reissue 1998) states:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . .
>
> . . . The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

■ In considering the specific criteria of § 42-365 concerning an award of alimony, a court's " 'polestar' " must be " 'fairness and reasonableness as determined by the facts of each case.' " *Bauerle v. Bauerle*, 263 Neb. at 889, 644 N.W.2d at 135, quoting *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). Stated another way, in determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is reasonableness. *Bauerle, supra.*

Janet and Richard's marriage was one of long duration, having lasted approximately 28 years. While the parties were separated

for approximately 3½ of the 5 years preceding the filing of the petition for dissolution, Richard voluntarily paid $450 per month toward the residential mortgage, for Janet's benefit, during the separation. Neither party has a degree beyond high school, although each took college courses at various times during the marriage. Both parties were involved in caring for the children during their minorities; however, Janet made employment adjustments following the birth of each of the children and worked part time while the children were young. At the time of the trial, Janet was 47 years old; however, Richard's age is not provided in the record. Both parties were fully employed at the time of trial, although Richard claims that Janet is not realizing her earning capacity in that she does not advertise her business and does not rent space to or employ other hairdressers. Janet has experienced various medical problems prior to the dissolution action, which problems have required her to miss work a couple of times a year for approximately 2 weeks at a time.

■ Richard asserts that Janet's earning capacity actually exceeds his and that therefore, the award of alimony was inappropriate. In awarding alimony, a court should consider, in addition to the specific criteria listed in § 42-365, the income and earning capacity of each party as well as the general equities of each situation. *Bauerle, supra.* However, there must be some evidence of a party's earning capacity before it may be considered. See *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000) (when earning capacity is used as basis for initial determination of child support, there must be some evidence that parent is capable of realizing such capacity through reasonable effort). Richard argues that Janet's earning capacity is approximately $60,000 per year, which he computes using the price she charges per haircut ($12), the length of time each haircut takes (15 to 30 minutes), and the total number of hours she works each week (40 to 48). There was no evidence presented to indicate that Janet works in such a continuous fashion. Further, there is no evidence that Janet has ever realized an earning capacity as suggested by Richard. The tax returns in the record reveal that Janet's net profit from her self-employment between the years 1993 and 1999 never exceeded $20,000. We reject Richard's argument concerning Janet's earning capacity.

The record reveals that for the last full tax year, 1999, Richard's gross income was $48,598 and Janet's was $21,631. In 2000, Richard's projected gross income was approximately $47,370 and Janet's was approximately $18,000. " ' "Disparity of income or potential income may partially justify an award of alimony." ' " *Bauerle v. Bauerle*, 263 Neb. 881, 891, 644 N.W.2d 128, 136 (2002), quoting *Ainslie v. Ainslie*, 249 Neb. 656, 545 N.W.2d 90 (1996). Both parties claim monthly expenses which exceed their respective net monthly incomes. Richard claims further hardship by virtue of having refinanced the Franklin real estate in order to pay the property judgment. However, Richard was awarded his entire pension with the city of Lincoln, valued by him at $65,000 at the time of the filing of the petition, which award presumably necessitated the equalization payment. Richard also argues that Janet was awarded all of the income-producing assets; however, this consisted only of the duplex, out of which she operated her business and received rent from their son.

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). Furthermore, an appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996). Considering the circumstances and the disparity in income in this case, we determine that the award of alimony by the district court was not an abuse of discretion. Richard's assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the district court's award of alimony in the decree of dissolution is affirmed.

AFFIRMED.